**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 CR 835-13 |
| | ) | |
| v. | ) | Judge Chang |
| | ) | |
| WESAM ABDEL FATTAH, | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Ms. Fattah, a Jordanian citizen, (Defendant's Motion for Release on Conditions, ¶ 1, *et seq.*, Dkt. #127), who is in this country illegally, and is or will be facing deportation proceedings, is one of 14 defendants charged in a three-count indictment pending before Judge Chang. Count I, which names all the defendants, including Ms. Fattah, charges that the defendants conspired with each other and with others known and unknown to the Grand Jury to knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture and substance containing a detectible amount of cocaine, a Schedule 2 controlled substance, in violation of 21 U.S.C. § 841(a)(h) in violation of 21 U.S.C. § 846. Certain of the other defendants are also Jordanian and are in the United States illegally.

The government seeks to detain Ms. Fattah under the Bail Reform Act of 1984, while the defendant insists that under the Act she should be released to the custody of her family, where she has promised to remain on house arrest, with electronic monitoring. The Motion assures us Ms. Fattah "has no intention fleeing [sic] and thus be relegated to forever looking over her shoulder waiting for the United States Government to grab her." [Dkt. #127, ¶ 16]. Apart from the fact that

1

Ms. Fattah has done precisely this before,"saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010). "Nothing is simpler than to make an unsubstantiated allegation." *Parko v. Shell Oil*, 739 F.3d 1083, 1086 (7th Cir. 2014). Unfortunately, the evidence adduced thus far in this case fails to support Ms. Fattah's lawyer's predictions and points to very different conclusions. While judges are not seers, *United States v. Porter*, 41 F.3d 68, 70 (2d Cir. 1994), bond decisions necessarily involve prophetic judgments. *Ward v. United States,* 76 S.Ct. 1063, 1066 (1956)(Frankfurter, J.). In this case, at least, it is fair to conclude that "past is prologue," *Shelby Cty., Ala. v. Holder*, 570 U.S. 529, 576 (2013); *Pan Am. World Airways, Inc. v. United States*, 371 U.S. 296, 310 (1963), and I do not find persuasive the defendant's assurances that she will attend all future court proceedings if only she is released on bond and allowed to live in her father's house subject to electronic monitoring.

For the reasons discussed below, I have concluded that the government has shown by a preponderance of the evidence that no condition or set of conditions will reasonably assure the appearance of the defendant at trial. *See* 18 U.S.C. § 3142. In light of this disposition, I do not reach the government's additional contention that bond should be denied because it has shown by clear and convincing proof that no condition or set of conditions will reasonably assure the safety of society.[1]

---

[1] The Bail Reform Act prescribes different burdens of proof depending on whether the question involves the efficacy of conditions to assure attendance at trial or to assure the safety of the community. If the former, the standard is a preponderance of the evidence; if the latter, the statute requires that there be proof by clear and convincing evidence. 18 U.S.C. 3142(f)(2)(B). The latter imposes a greater burden on the government than the former. *Maynard v. Nygren,* 332 F.3d 462, 469 (7th Cir.2003). Clear and convincing evidence is evidence that places "in the ultimate fact-finder an abiding conviction that the truth of ... [the] factual contentions are 'highly probable.'" *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984). *See also United States v. Boos,* 329 F.3d 907, 911 (7th Cir. 2003).

## ANALYSIS

### A.

The Bail Reform Act's preference for liberty – a preference that is consistent with and demanded by our entire heritage – ensures that pretrial detention will occur only in unusual circumstances. *Hamilton v. Lyons*, 74 F.3d 99, 105 (5th Cir. 1996). As the Supreme Court has stressed, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Thus, 18 U.S.C. § 3142(a) and (b) provide that a person charged with an offense shall be released on personal recognizance or upon execution of an unsecured appearance bond, unless further conditions are necessary to reasonably assure attendance at trial and the safety of the community. The preference for release accounts for §3142(e)'s "require[ment that] the judge...consider the possibility of less restrictive alternatives to detention." *United States v. Infelise*, 934 F.2d 103, 105 (7th Cir. 1991)(Posner, J.). *See also United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). Doubts regarding the propriety of release should be resolved in the defendant's favor. *United States v. Barnett*, 986 F.Supp. 385, 392 (W.D. La. 1997)(collecting cases).

Still, it is essential to recall that bond decisions are inherently judgmental and depend not on tendentious generalities or assurances, but on a weighing of the comprehensive list of non-exclusive factors in §3142(g). Thus, the statute requires a judge considering an application of bail to consider: "the nature and circumstances of the offense charged," "the weight of the evidence against the person," and "the history and characteristics of the person, *including,*" the person's "*character*, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal

history," and several other factors. (Emphasis supplied).

By its plain, spacious terms the Act requires a complete examination of all facets of a defendant's history and character. Thus, all of the information that was presented to the court regarding the defendant's history of deception, illegal entry and continued residence in the United States and her calculated lies to authorities are appropriate matters for consideration in determining whether release on the conditions that have been proposed will reasonably assure the defendant's attendance at trial.

The instant case also involves a presumption that conditions of release will not suffice to reasonably assure the appearance of the defendant at trial or the safety of the community. The presumption can be rebutted by the defendant, and it does not take a particularly great quantum of evidence for the presumption to be rebutted. But even where it is, the presumption does not disappear from the case. Rather, it continues to weigh in the balance against bail. In other words, even after a defendant meets his burden of producing some evidence to rebut the presumption, the presumption does not entirely vanish from the case. *See, e.g., United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991); *United States v. Barker*, 876 F.2d 475, 476 (5th Cir. 1989);*United States v. Diaz*, 777 F.2d 1236, 1237–38 (7th Cir. 1985). As the court put it in *United States v. Rangel*, 318 F. Supp. 3d 1212, 1216 (E.D. Wash. 2018), "[t]he presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to the factors listed in § 3142(g).'" *Accord United States v. Holguin*, 791 F.Supp.2d 1082, 1089 (D.N.M. 2011)("while Holguin has met her burden of production, the presumption 'remains a factor for consideration by the district court in determining whether to release or detain.'").

4

In light of intimations in the defendant's motion for bond it should be stressed that merely because Ms. Fattah is charged with a serious crime involving drugs does not mean that, as a matter of law, she cannot be granted bond. *Cf. Salerno*, 481 U.S. at 750. Indeed, there are any number of cases involving crimes of violence or drug trafficking where bond either has been granted or where the court made clear that bond was at least a theoretical possibility. *See Infelise*, 934 F.2d at 105; *United States v. Leonti*, 326 F.3d 1111, 1114 (9th Cir. 2003); *United States v. O'Dell*, 204 F.3d 829 (8th Cir. 2000); *United States v. Gigantei*, 39 F.3d 42, 48 (2nd Cir. 1994); *United States v. Mancuso*, 726 F.Supp. 1210, 1214 (D.Nev. 1989). In *United States v. Ploof*, 851 F.2d 7, 11-12 (1st Cir. 1988), the First Circuit stressed that even where there was serious risk of obstruction, intimidation, threat, or death to prospective witnesses, detention under the Bail Reform Act still requires showing that no set of conditions will "*reasonably* assure" safety. (Emphasis in original). Thus, the decision on bond in this case is a function of the analysis of all those factors enumerated in §3142. We do not understand the government's argument against bond to take a different position or to argue that bond in this case is solely a function of the crime charged. Quite the contrary.

**B.**

As we noted earlier, *supra* at 3, the Bail Reform Act requires that there be a examination by the court of the non-exclusive list of factors set forth in the Act. A careful consideration of these factors, which includes evidence related to the character and history of the defendant, leads to the conclusion that release under the conditions proposed by the defendant is not appropriate.

Ms. Fattah is a citizen of Jordan, who it is conceded entered the United States illegally in Los Angeles in about January 2014. She was denied permission to enter the country and was placed on what is figuratively referred to as "port parole." She was allowed to leave the custody of immigration

authorities after solemnly promising to return immediately to Jordan. She did not, but stayed in the country illegally over the next five years.

Five months later, on about May 1, 2014, she was picked up by the local police in Los Angeles for possession of a controlled substance and turned over to ICE. She again solemnly promised to leave and was again released. She did not leave, but rather went into hiding in the United States and is now charged by the grand jury with a serious drug offense. Her present lawyer represents that she hired an immigration lawyer in early 2016 – nearly three years ago – but conceded, in response to my questions, that nothing formal has been done in any court and that no asylum application has been filed. The lawyer was, Mr. Beaumont claimed, "getting ready." She had not, Mr. Beaumont said, received materials that she had long sought and which she believed were necessary in order to initiate formal action. Be that as it may, the undeniable reality is that Ms. Fattah entered the United States illegally and falsely promised governmental officials on two separate occasions that she would promptly leave the United States voluntarily. She did not and has now been indicted. An unfavorable outcome to any immigration proceeding based on her illegal status – and what ultimately may occur in this case in the event of a guilty finding – cannot be ignored. The defendant simply cannot predict with any certainty that things will go her way in an immigration court and that she will be allowed to stay in the United States. Hence, there is a significant motive to flee as she twice did successfully in the past – despite her solemn assurances that she would leave the United States.

While the defendant has stressed that since she is now three months pregnant, release on the conditions that she has proposed not only is appropriate but would be far more faithful to the Bail Reform Act's preference for liberty. Ms. Fattah has offered not a shred of medical or other evidence

that her condition cannot be appropriately accommodated in a jail setting, and she has wisely not suggested that pregnancy is a condition that automatically entitles one to release on conditions. It is not. Not only does the Bail Reform Act not require that a pregnant woman be released on bond, *United States v. Doe*, 520 F. App'x 921, 922 (11th Cir. 2013); *United States v. Lavandier*, 14 F. Supp. 2d 169, 174 (D.P.R. 1998), the Act, by its terms and structure, requires individual assessment of the history, background, and character of the defendant. Mechanical, *a priori* rules are inconsistent with the Act, itself. *Daves v. Dallas Cty., Texas*, 341 F. Supp. 3d 688 (N.D. Tex. 2018).

In *Holguin*, the defendant argued that her pregnancy made it unlikely that she would flee and that accordingly, bond should be granted. The court disagreed and in an extensive and thoughtful Opinion concluded the defendant was a flight risk and denied bond despite the fact that the defendant, as here, offered to be placed on electronic monitoring.

As an aside, it is not without significance that the evidence at the bond hearing in the instant case showed that the defendant, who has focused on the fact that she is (three months) pregnant, has only lived intermittently (at best) with her first child, who has been living with the defendant's parents. Moreover, although pregnant, the defendant has admitted to smoking marijuana within the past several days before she was taken into custody and also admitted that she has a few drinks on weekends. Although she claimed she "used to smoke marijuana" she insists she does not "do so *regularly*" now. (Emphasis supplied).[2] This behavior at least raises questions regarding Ms. Fattah's insistence that release on bond is necessary to protect her unborn child. In the last analysis, Ms.

---

[2] There is a good deal of medical thought that any ingestion of marijuana or alcohol is contraindicated during pregnancy. The argument is not that this conduct is a disqualifier for bond. It is not. Rather, in light of the defendant's inordinate focus on her pregnancy and the health of her unborn child, it is not without some significance that she has not abstained from marijuana or alcohol. The defendant also refused to give a urine sample which would have tested for opiates and other drugs.

Fattah's pregnancy is not a conclusive factor in determining whether release on conditions proposed by Ms. Fattah would reasonably assure her attendance at trial.

While the defendant does not dispute that her prior lies and deceptions to authorities are factors that can be considered on the question of bond, it is her position that they really should not count for much and that her current assurances through her lawyer that she will not flee if she is granted bond should control. I do not agree with those exceedingly partisan conclusions, which in this case, are at odds with § 3142 and with common sense and human experience, which always have a role to play in the solution of legal problems, *see, e.g., United States v. Montoya De Hernandez*, 473 U.S. 531, 542 (1985); *United States v. Reichling*, 781 F.3d 883 (7th Cir. 2015); *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009); *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 743 (1st Cir. 1995); *Greenstone v. Cambex Corp.*, 975 F.2d 22, 26 (1st Cir. 1992) (Breyer, C.J.); *United States v. Ali*, 952 F.2d 405 (7th Cir. 1992); Posner, How Judges Think, 116 (Harvard University Press 2008) – including bond decisions. *United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989); *United States v. Malekzadeh*, 789 F.2d 850, 852 (11th Cir.1986)*;United States v. Carswell*, 144 F. Supp. 2d 123, 135 (N.D.N.Y. 2001)*;United States v. Chappelle*, 51 F. Supp. 2d 703, 706 (E.D. Va. 1999).

Past behavior is often prologue and is a proper predictive criterion to be employed in determining whether a person will abide by his or her present promises. In my view, the present circumstances and Ms. Fattah's undisputed history support the government's argument that release on the conditions she has proposed would not reasonably assure her attendance at trial. The crime with which Ms. Fattah is presently charged is extremely serious, and given the circumstances of the defendant's present situation the motive to again flee is obvious and undeniable. It is no answer to

say, as does Ms. Fattah, that she does not want to return to Jordan and likes the United States. That argument calls to mind what Judge Easterbrook has said in another context,"So What?...Who cares?...True, but irrelevant."*Israel Travel Advis. Serv. v. Israel Iden. Tours*, 61 F.3d 1250, 1259 (7th Cir. 1995). Her insistence that she will not flee to Jordan may well be true but it is quite beside the point. That is an empty and quite meaningless promise. The United States is a massive country with ample places and opportunities for a fugitive to conceal herself – as Ms. Fattah's history shows. Thus, her present insistence that she will not flee and will abide by her present promises ill comports with her prior lies and deceptions, which may appropriately be considered.

The desire to be and remain in this country is shared by countless people, no matter their citizenship. But it is certainly not the inevitable basis for a favorable bond decision. Or else, virtually everyone would get bond. The question is not whether Ms. Fattah likes it here (and dislikes Jordan), but whether the conditions she proposes will reasonably assure her attendance at trial. I conclude that under the unique circumstances of this case, they will not, and that there is a serious and intolerable risk that Ms. Fattah, if placed on bond, will, as she has done in the past, flee and attempt to conceal herself somewhere in the United States.

I reject Ms. Fattah's unpersuasive contention that her retention of immigration counsel several years ago and her claimed willingness to now aid prosecutors in this case are factors that inexorably require a favorable bond decision. They most assuredly do not. It may be noted that the crime that has been indicted in this case occurred during the time that Ms. Fattah insists she had retained immigration counsel to act on her behalf.

In light of the defendant's argument, it bears repeating that the government's position is not that "because of her current residency status" "the defendant is a flight risk." [Dkt. #217 at ¶ 6].

9

Indeed, the government has acknowledged that residency status standing alone is not a basis for denial of bond. But, it is equally true, as the defendant concedes, that immigration status may be considered as one element in the determination of risk of flight. [Dkt. #127 at ¶ 14]. It does not seem open to real question that if the defendant were to be convicted on the present charges, the likelihood of her deportation (to Jordan) seems, if not inevitable, at least likely. Of course, it is impossible to forecast the future with certainty, but Ms. Fattah would certainly be faced with the risk not only to her liberty but to her ability to remain in the United States if she were to be convicted. The risk is also present in light of her illegal entry into the country and her false promises to leave. While it is perhaps uncertain as to what the outcome of these situations may be, Ms. Fattah certainly cannot assume that all will turn out favorably to her. Thus, there is an obvious and significant risk in this case that release on the conditions proposed by Ms. Fattah would not reasonably assure her attendance at trial on the charges returned by the Grand Jury.

## CONCLUSION

Careful review of the statutory factors under the Bail Reform Act leads to the firm conclusion that bond in this case is inconsistent with the goals of the Act. The government has shown by a preponderance of the evidence that the conditions proposed by Ms. Fattah will not reasonably assure her attendance at trial. Accordingly, the defendant's motion for bond is denied, and the government's motion for detention based upon risk of flight is granted. I do not reach the question of whether the government has shown by clear and convincing evidence that denial of bond is required to assure the safety of the community.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 1/16/19